IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TOWN OF DAVIS**, a municipal
corporation,

      Petitioner,

v.                              Civil Action No. 2:05-00081

**WEST VIRGINIA POWER AND
TRANSMISSION COMPANY, INC.**,
a/k/a Allegheny Power and
**CANAAN VALLEY INSTITUTE, INC.**,

      Respondents.

### MEMORANDUM OPINION AND ORDER

Pending before the court is petitioner's objection to the removal of this action from the Circuit Court of Tucker County, West Virginia (Doc. No. 8), which the court will address as a motion to remand. Also pending is respondent Canaan Valley Institute's motion to compel the joinder of certain parties (Doc. No. 18), and the motion to intervene of the National Youth Science Foundation (Doc. No. 24). For the reasons set forth below, the court **DENIES** the motion to remand, **GRANTS IN PART** and **DENIES IN PART** the motion to compel joinder, and **GRANTS** the motion to intervene.

    I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, the Town of Davis, West Virginia ("Davis"), is a public municipal corporation. (Doc. No. 1 Ex. A at 7.) In October 2005, it filed an application for condemnation of land in

the Circuit Court of Tucker County, West Virginia, with regard to two tracts of land it contends are owned by respondents West Virginia Power and Transmission Company ("Allegheny Power") and Canaan Valley Institute ("CVI").[1] (Doc. No. 1 Ex. A.) Davis's application alleges that the condemnation is necessary so that Davis may appropriate a spring, stream, and surrounding property in order to protect and preserve the purity of the town's water supply. (Id. at 8.)

CVI removed the action to this court on October 17, 2005, claiming jurisdiction pursuant to 28 U.S.C. § 1442, the federal officer removal statute.[2] The notice of removal states that CVI

---

[1] The application alleges that Allegheny Power holds title to a parcel identified in Exhibit A to the application, and that CVI owns the parcel identified in Exhibit B. (Doc. No. 1 Ex. D ¶¶ 3, 4.) In its answer to the application, CVI states that it purchased Parcel A from Allegheny Power by a deed dated September 23, 2005, and recorded on October 13, 2005, two days before petitioner filed its application in state circuit court. (Doc. No. 5 ¶ 3, Doc. No. 1 ¶ 9.) With regard to Parcel B, CVI states that it holds legal title to all but approximately one-half acre, title to which was held by the West Virginia Public Land Corporation in fee simple at the time the answer was filed. (Doc. No. 5 ¶ 4.)

[2] Section 1442 states in pertinent part as follows:

§ 1442. Federal officers or agencies sued or prosecuted.

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an

purchased the land in question with federal grant money disbursed to it by the National Oceanic and Atmospheric Administration ("NOAA"), an agency of the United States Department of Commerce. (Doc. No. 1 ¶ 10.) CVI explains that the grants were made under the statutory authority of the Secretary of Commerce pursuant to 15 U.S.C. § 313, "for the specific purposes of environmental conservation and research and education programs conducted by CVI and other governmental, charitable and private research organizations under the NOAA Mid-Atlantic Highlands Program." (Doc. No. 1 ¶¶ 11-12.)

CVI further explains that its use, management, and disposition of the land is governed by federal law and is subject to NOAA's direct supervision and control. (Id. ¶ 14; see 15 C.F.R. § 14.32.)[3] Citing 15 C.F.R. § 14.37, CVI describes its

---

> official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
>
> (2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.
>
> . . .

28 U.S.C. § 1442.

[3] Section 14.32 provides as follows:

The [Department of Commerce] award shall prescribe requirements for recipients concerning the use and disposition of real property acquired in whole or in part under awards. Unless

otherwise provided by statute, such requirements, at a minimum, shall contain the following:

(a) Title to real property shall vest in the recipient subject to the condition that the recipient shall use the real property for the authorized purpose of the project as long as it is needed, provided that, in lieu of title, with the approval of the Grants Officer, the recipient may hold a leasehold or other interest in the property appropriate to the project purpose. The recipient shall not dispose of or encumber the property or any interest therein without approval of the Grants Officer.

(b) The recipient shall obtain written approval by the Grants Officer for the use of real property in other federally-sponsored projects when the recipient determines that the property is no longer needed for the purpose of the original project. Use in other projects shall be limited to those under federally-sponsored projects (i.e., awards) or programs that have purposes consistent with those authorized for support by the [Department of Commerce].

(c) When the real property is no longer needed as provided in paragraphs (a) and (b) of this section, the recipient shall request disposition instructions from the [Department of Commerce] or its successor Federal awarding agency. The responsible Federal agency shall observe one or more of the following disposition instructions:

(1) The recipient may be permitted to retain title without further obligation to the Federal Government after it compensates the Federal Government for that percentage of the current fair market value of the property attributable to the Federal participation in the project.

(2) The recipient may be directed to sell the property under guidelines provided by the Grants Officer and pay the Federal Government for that percentage of the current fair market value of the property attributable to the Federal participation in the project (after deducting actual and reasonable selling and fix-up expenses, if any, from the sales proceeds). When the

interest in the land as constituting only "bare legal title."[4] (Doc. No. 1 ¶ 15.) In accordance with this regulation, the contractual agreement entered into between NOAA and CVI states that CVI must obtain NOAA's permission before disposing of, modifying the use of, or changing the terms of the title to the property. (Doc. No. 1 ¶ 16.) It further dictates that CVI "will record the Federal interest in the title of real property in accordance with [NOAA] directives . . . ." (Id.) This interest was not recorded until the commencement of this litigation,

---

> recipient is authorized or required to sell the property, proper sales procedures shall be established that provide for competition to the extent practicable and result in the highest possible return.
>
> (3) The recipient may be directed to transfer title to the property to the Federal Government or to an eligible third party provided that, in such cases, the recipient shall be entitled to compensation for its attributable percentage of the current fair market value of the property.

15 C.F.R. § 14.32.

[4] Section 14.37 provides as follows:

§ 14.37 Property trust relationship.

Real property . . . that [is] acquired or improved with Federal funds shall be held in trust by the recipient as trustee for the beneficiaries of the project or program under which the property was acquired or improved. The Grants Officer may require recipients to record liens or other appropriate notices of record to indicate that . . . real property has been acquired or improved with Federal funds and that use and disposition conditions apply to the property.

15 C.F.R. § 14.37.

however, at which time CVI recorded a "Deed Notation and Security Interest" with a nunc pro tunc date of December 18, 2002, the date it acquired Parcel B. (Doc. No. 18 Ex. A.)

CVI contends that removal is proper under either § 1442(a)(1) or (a)(2). (Id. at ¶ 18.) Allegheny Power joins in the notice of removal. (Doc. No. 3.) On November 1, 2005, Davis filed its motion to remand, objecting to the notice of removal on several grounds. (Doc. No. 8.) In March of this year, CVI requested that the court enter a scheduling order if it desires a response by CVI to Davis' motion to remand. (Doc. No. 16 at 6). In order to avoid further delay, however, and because respondents' position is adequately represented in the notice of removal, the court declines CVI's suggestion.

On April 6, 2007, CVI filed a motion to compel the joinder of the United States Department of Commerce, the West Virginia Division of Natural Resources, and the West Virginia Public Land Corporation. (Doc. No. 18.) Additionally, on May 15, 2007, the National Youth Science Foundation filed a motion to intervene, alleging a contractual interest in a portion of the land at issue. (Doc. No. 24.) CVI joined in this motion on June 7, 2007. (Doc. No. 33.) Davis opposes both the motion to compel joinder and the motion to intervene.

## II. ANALYSIS

### A. Motion to Remand

As mentioned above, CVI claims jurisdiction under both 28 U.S.C. § 1442(a)(1) and (a)(2). Davis correctly observes that the plain language of the statute renders § 1442(a)(1) inapplicable to this case; it relates only to acts of a federal officer undertaken with regard to "the apprehension or punishment of criminals or the collection of the revenue." 28 U.S.C. § 1442(a)(1). Davis assumes in its brief that this last phrase applies also to the § 1442(a)(2) officer from whom title to property is derived:

> The language "any such officer" obviously refers to the "officer" referred to in 28 U.S.C. § 1442(a)(1); "any such officer" . . . is thus an officer who is sued either for an act done under color of his office or based upon a claim related to the apprehension of criminals or the collection of revenue.

(Doc. No. 9 at 3.) Case law indicates otherwise, however.

The issue was discussed in <u>Town of Stratford v. City of Bradford</u>, 434 F. Supp. 712 (D. Conn. 1977), a case substantially similar to the one before this court. In that case, the Town of Stratford brought an action in state court to determine what compensation it owed for the taking by eminent domain of sewer easements through the land of Sikorsky Memorial Airport, land owned by the City of Bridgeport. <u>Id.</u> at 713. Bridgeport had obtained the land partially from the federal government, and the deed reserved certain interests in the land to the United States.

-7-

Id. Bridgeport removed the case under the federal officer removal statute, citing various federal laws and regulations that stood to be affected by the suit. Id.

In analyzing § 1442(a)(2), the Stratford court noted that preceding versions of the section had included the requirement that the property owner's title be derived specifically from a federal revenue officer. Id. at 714. When Congress undertook a comprehensive revision of Title 28 in 1948, however, "the limitation of what is now § 1442(a)(2) to revenue officers and their successors and to revenue laws was dropped. The Reviser's Note gives no explanation for the change." Id. As a result, "§ 1442(a)(2) permits removal by a property holder whose title is derived from *any* United States officer when the action affects the validity of any United States law." Id. n.1 (emphasis added); see also Faulk v. Owens-Corning Fiberglass Corp., 48 F. Supp. 2d 653, 669 (E.D. Tex. 1999)(same).

The Stratford court remanded the case because it found that Stratford's suit did not raise any issues as to the validity of a federal law. Stratford, 434 F. Supp. at 715. Although Bridgeport intended to raise federal issues in its defense, the court concluded that such defensive matters would not supply removal jurisdiction under the federal officer removal statute, "just as they would not supply federal question jurisdiction

under [28 U.S.C.] § 1331." Id. It was solely on this basis that the court remanded the action.

Subsequently, the United States Supreme Court clarified that § 1442 provides an exception to the general rule that a federal defense does not qualify a case for removal. "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law." Jefferson County v. Acker, 527 U.S. 423, 430-31 (1999)(citing Mesa v. California, 489 U.S. 121 (1989)). Although Acker and Mesa involved other subsections of § 1442, this reasoning has also been applied to suits removed pursuant to § 1442(a)(2). Bithorn v. Rosello-Gonzalez, No. 01-2053, 2002 U.S. Dist. LEXIS 15614, at *26-30 (D. P.R. March 18, 2002)(Delgado-Colon, Mag.), adopted by 200 F. Supp. 2d 26 (D. P.R. 2002)(Dominguez, J.).

Finally, the motion to remand states simply that "this eminent domain action obviously does not affect 'the validity of any law of the United States.'" (Doc. No. 9. at 3.) CVI's notice of removal cites numerous laws and legal doctrines whose validity it asserts may be affected by this litigation. (Doc. No. 1 at 8-9.) On this point, however, the court need look no further than the above federal regulations, whose object - the reservation to the United States of certain interests in property purchased through federal grants - certainly stands to be

frustrated by this action. Accordingly, the motion to remand must be denied.

**B.   Motion for Joinder**

CVI moves to compel the joinder of the United States Department of Commerce on the grounds that the Department holds certain interests in the subject property, as described above, making it a necessary party to the proceedings. (Doc. No. 18.) CVI also seeks the joinder of the West Virginia Division of Natural Resources ("DNR") and the West Virginia Public Land Corporation ("PLC") because of their alleged interest in a portion of the Blackwater River encompassed by the subject parcels of land. (Doc. No. 18.) Respondent contends that the joinder of PLC is appropriate because it holds fee simple title to one-half acre of Parcel B pursuant to West Virginia Code Section 20-1A-1. (Id. ¶ 17.) CVI further states that recent state legislation operates to transfer title in the state's banks, shores, and the beds of the state's watercourses from PLC to its parent agency, DNR, effective July 1, 2007, rendering DNR a necessary party to this action. (Id. ¶ 18.) Both DNR and the Department of Commerce have filed responses to the motion manifesting their agreement with CVI's position. (Doc. Nos. 26, 30.)

Davis opposes the joinder of the Department of Commerce on the grounds that the Deed Notation and Security Agreement

evincing the relationship between CVI and the Department was not recorded until the commencement of this action, that the document was "ex parte" and executed nunc pro tunc at the time it was recorded, and that it represents a "manipulative attempt" to erect an impediment to these condemnation proceedings. (Doc. No. 19 at 3-4.) Davis further opposes the joinder of PLC and DNR, contending simply that these parties have no interest in the land in question, and that their joinder at this late date will prejudice Davis by further delaying the proceedings. (Doc. Nos. 19, 31.)

Federal Rule of Civil Procedure 71A governs condemnation proceedings, including those conducted pursuant to state law. Fed. R. Civ. P. 71A(k). It dictates that, prior to any hearing in the proceedings, all parties "having or claiming an interest" in the property must be added as defendants where their names could be learned by a reasonably diligent search of the records, or where their names have otherwise actually been learned. Fed. R. Civ. P. 71A(c)(2). The determination of which property interests are sufficiently important to require joinder under this rule is made by looking to state law. United States v. 194.08 Acres of Land, 135 F.3d 1025, 1031 (5th Cir. 1998)(citing Georgia Power Co. v. Sanders, 617 F.2d 1112, 1116 (5th Cir. 1980)). Under West Virginia law, all persons who own an interest in the land to be taken are necessary parties. W. Va. Code § 54-

2-2; Dep't of Natural Res. v. Cooper, 162 S.E.2d 281, 285 (W. Va. 1968).

In opposing the joinder of the Department of Commerce, Davis argues that CVI's failure to record the Department's interest in the subject property at the time CVI acquired it renders that interest null, at least with regard to the instant litigation. (Doc. No. 19 at 3-4.) Davis cites no authority for this proposition, and the court is unable to locate any such authority. It is true that the failure to record a deed renders it void as to subsequent purchasers for valuable consideration without notice. See W. Va. Code § 40-1-9. However, even in a case involving a purchaser - which this case does not - where the purchaser receives actual notice of another claim to the property before the completion of the purchase and the payment of consideration, he will not be protected from the other claim by the recording acts. Alexander v. Andrews, 64 S.E.2d 487, 493-94 (W. Va. 1951)("To be protected by [§ 40-1-9] against a prior unrecorded deed, one must be a complete purchaser, must have had no notice of the prior contract or deed, and have paid all the purchase money for the land purchased by him."). Davis' argument is without merit. The Department of Commerce's claimed interest in the property at issue is such that it must be joined as a defendant under the authorities cited above.

With regard to PLC and DNR, CVI's motion states that PLC holds title to the banks, shores, and beds of the Blackwater River pursuant to West Virginia Code § 20-1A-1. (Doc. No. 18 ¶ 17.) The motion, which was filed on April 6, 2007, adds that then-pending state legislation effective July 1, 2007, transfers the state's title in all of the banks, shores, and beds of West Virginia's watercourses from PLC to DNR, its parent agency. (Id. ¶ 18.) Indeed, § 20-1A-1 has since been repealed by that legislation, and the state's interest in these waterways and accompanying land is now vested directly in DNR. W. Va. Code § 5A-11-1(d)(1). Accordingly, only DNR, not PLC, is a necessary party to these proceedings, and the court grants the motion for joinder as to DNR.[5]

C. **Motion to Intervene**

Also before the court is the motion to intervene of the National Youth Science Foundation ("NYSF"). (Doc. No. 24.) In support of its motion, NYSF explains that in June 2006 it entered into a contract with CVI whereby CVI agreed to sell NYSF an undefined tract of up to 100 acres of land south of the Blackwater River in Tucker County, West Virginia, or, in the

---

[5] The court is unpersuaded by petitioner's argument that such joinder will delay these proceedings to petitioner's prejudice. Even if the rules relating to joinder contemplated an exception for prejudice to the original parties – which it appears they do not – there could be no significant prejudice to petitioner from DNR's joinder, given the relative inactivity in this matter to this date.

alternative, to negotiate an easement for NYSF over all of the land owned by CVI in that area. (Id.) NYSF adds that the land it intends to purchase is situated in close proximity to the land that is the subject of this action, and that the intended means of ingress and egress to the sale property requires access across the land Davis seeks to condemn. (Id.) In the event NYSF instead purchases an easement for use of CVI's land, the easement would encompass the land that is the subject of this litigation. (Id.) NYSF has placed significant sums into an escrow fund to effect the completion of the agreement. (Id.) Davis objects to the motion on the grounds that NYSF does not have a sufficient interest in the property at issue to warrant its intervention, and contends that granting the motion at this stage in the litigation would prejudice the town. (Doc. No. 28.)

Intervention is governed by Federal Rule of Civil Procedure 24, which allows for both mandatory and permissive intervention. Rule 24(a)(2) requires the court to grant a timely motion to intervene where

> the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). In other words, four requirements must be met before a party may intervene as a matter of right. "(1)

[T]he application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation." Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n, 646 F.2d 117, 120 (4th Cir. 1981).

As an initial matter, the court notes that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986)(quoting Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967)). Regardless of whether NYSF and CVI have entered into an actual sales contract for the land in question, which Davis argues they have not, NYSF does claim an interest in the subject property under its contract (Doc. No. 24, Ex. A), as required by Rule 24(a). See Sierra Club v. U.S. Envtl. Prot. Agency, 995 F.2d 1478, 1482 (9th Cir. 1993)(describing sufficient interest as that based on real or personal property, contracts, or permits regarding land). Moreover, it is clear that the condemnation sought by the town, if allowed, has the potential to impair NYSF's contractual interest; the land Davis seeks to

condemn encompasses both the land needed to access the potential sale property and the land contemplated by the easement option.

As for the fourth element above, the motion satisfies the requirements of Rule 24(a) if the movant's interest "may be" inadequately represented by the present parties to the litigation. Trbovich v. U.M.W.A., 404 U.S. 528, 538 (1972). Furthermore, "the burden of making that showing should be treated as minimal." Id. The Supreme Court in Trbovich considered the element satisfied where the party already present had two distinct, potentially conflicting interests in the litigation. Id. The same may be said of the instant case. Although CVI and NYSF both have an interest in forestalling the condemnation Davis seeks, they also have differing and conflicting interests under the contract into which they have entered. In view of their contractual relationship, the court finds NYSF's interest to be inadequately represented in this litigation by CVI.

With regard to the timeliness of the motion, courts are to consider how far the suit has progressed, the prejudice which delay might cause the other parties, and the reason for any tardiness in bringing the motion to intervene. Gould v. Alleco, Inc., 883 F.2d 281, 286 (4th Cir. 1989). As mentioned above, the court can detect little, if any, prejudice to the current parties by the addition of another party at this stage, considering the lack of activity in this matter to date. There has been no

discovery thus far, and no scheduling order has been entered. Although NYSF's motion gives no reason for the eleven-month delay between the time it entered into the contract with CVI and the time it filed its motion to intervene, the first two elements in the timeliness inquiry weigh heavily in NYSF's favor. Accordingly, the motion to intervene is deemed timely, and the court grants it.[6]

### III.  CONCLUSION

For the reasons stated herein, the court **DENIES** petitioner's motion to remand (Doc. No. 8), **GRANTS** respondent's motion to compel joinder (Doc. No. 18) as to the United States Department of Commerce and the West Virginia Division of Natural Resources, and **DENIES** the same as to the West Virginia Public Land Corporation, and **GRANTS** the National Youth Science Foundation's motion to intervene (Doc. No. 24).  The Clerk is **DIRECTED** to add the Department of Commerce, the Division of Natural Resources, and the National Youth Science Foundation as respondents to this action, and to file the answer of the National Youth Science Foundation (Doc. No. 24 Ex. B) to petitioner's application.

---

[6] To the extent the enforceability of the agreement entered into between CVI and NYSF may be called into question, the court notes that NYSF also meets the standard for permissive intervention set forth in Federal Rule of Civil Procedure 24(b). The motion is timely, NYSF's intervention will not unduly prejudice the existing parties, and an attempt by NYSF to enforce its contract with CVI would raise questions of law or fact in common with the instant litigation.  Fed. R. Civ. P. 24(b).

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

It is **SO ORDERED** this 10th day of August, 2007.

ENTER:

*David A. Faber*
David A. Faber
United States District Judge